The morning is number 2320448, Petrobras, America v. Samsung Heavy Industries. Good morning. May it please the court. Jonathan Walsh for Appellate Petrobras, America. The Supreme Court requires a plaintiff to establish both but-for causation and RICO, I'm sorry, proximate causation in order to show injury by reason of a RICO violation. There is no dispute in this case that there is but-for causation. The district court held that Samsung's bribery was the but-for cause of Petrobras, America's injury. The district court also found that Samsung violated, Samsung's bribery scheme violated the RICO statute. So the only issue on appeal here is proximate cause, which requires that the plaintiff show some direct connection between its injury and the injurious conduct. Here, there is no dispute that Samsung bribed two officials of Petrobras, the parent entity, to sign a $600 million contract for a drill ship that none of its subsidiaries needed. Samsung did so knowing that this corruptly procured contract- When you say none of the subsidiaries needed it, was that known in 2006 when the bribery occurred, or was that something that became known only when the oil business collapsed? That's a good question, Your Honor. So there's a probabilistic study that was done in connection with recommending this drill ship contract. Keep in mind that there were two other drill ships that were approved by the same rogue officials around the same time period. Samsung had already bribed these officials to approve the P-10 contract and the V-10 contract. Yes, but at the time, that was in line with Petrobras's, as I understood it, goal to extend its deep water drilling capacity around the world. At the time of the approval of this contract, the DS-5 contract, there were internal studies that questioned the need for a third drill ship. Well, aren't there always internal studies that say something in big companies like this? Yes, Your Honor, but the difference is that Mr. Severo is the executive director, and therefore, the person who can overrule the internal studies, and he's the one that was- Well, I'm not going to take up all your time, but I just have one other question. Wasn't Mr. Severo an officer or something at Petrobras America? Yes, Your Honor, he was the chairman at the time. However, there's no evidence, and Samsung is not arguing, that Mr. Severo was active at Petrobras America at the time. However, again, this is one company. Petrobras is a large multinational conglomerate. It has operations in various jurisdictions. Petrobras America is one such jurisdiction. When the contract was signed, there was everyone's expectation that when the contract was signed, there was everyone's expectation that the company would be subsidiary. So again, there's no dispute on but-for causation, no dispute that Samsung violated the RICO statute. We're talking now only about proximate causation. So it's clear the only entity that paid the amounts under the drilling contract is Petrobras America. It is the only entity that suffered an injury here, but what the district court did is create a per se rule that the assignment by itself, even when done by a parent company for its subsidiary, that causes an irrevocable break in the causal chain. That is a formalistic approach, contrary to clear precedence of the Supreme Court and this Court. It takes no account how modern multinational businesses operate. No other court has adopted such a person. I see this sort of automatic rule that you're talking about. Are you referring to page 22 of the, or I'm looking at page 22 of the district court opinion, and what I see is sort of a fact-based analysis that this simply was a decision made by the sub, and so I'm not seeing this sort of categorical rule that you're describing. Judge Hope, we had submitted an affidavit from Representative Petrobras that said that Petrobras America had no choice but to accept this drill ship contract. I understand that there's a factual dispute that may or may not be relevant to the issue. My point is just, as I heard you here today, you were imputing to the district court this sort of categorical automatic presumption. I'm just not seeing that here. You're right, Your Honor. At the exact same page site, the district court disregards this affidavit and declares that even, it's not even an issue whether it was, had a say in accepting the assignment. It was the assignment alone that broke the causal chain, and she goes through, the judge goes through both. I have an act that the assignment was, you know, something that was a voluntary act. It wasn't, okay, keep going. Let me see if I can. She doesn't make a factual finding, Your Honor. She goes directly to the point of the assignment and says any assignment, effectively any assignment, would break a causal chain because the assignment basically is not foreseeable. Well, we can disagree with that and still find no proximate cause because once Petrobras America undertook this, they did operate it for two years, and then, if I recall correctly, then they extended the lease, didn't they? And then they shipped it off, then they leased it to somebody else, right? You're right, Your Honor. It didn't really go south. You know, it's easy to say, oh, we lost our shirt because of the bribe, but it didn't really go south until market conditions really went south. Keep in mind, Judge Jones, that this was a five-year contract. Petrobras America was locked in for five years of drilling services. Well, I mean, that's probably industry standard, right? Whether it's industry standard or not, at the time the contract was signed, it was not needed. No subsidiary needed this drill ship. Keep in mind, there were two other drill ships on the waters that were already purchased. I thought the first sentence of the district court's opinion hit the nail on the head. It said most RICO cases, you have trouble finding a crime. Well, there's no trouble finding a crime here, to be sure. But at the same time, it is very odd for a company, for basically the entity that that did the bribes to be suing in America. It's like Petrobras America taking advantage of American law to sort of wash its hands of the foul deeds that the parent company did. I mean, it's just, I agree with you. We don't want to make bad law about causation, but this whole series of this case seems to be a manipulation of American law for trouble damages. Your Honor, if I can push back. Sure. Petrobras America is the company that paid all of the fees under this contract. It suffered a real injury. The district court found it had standing to bring this case, and it found that the injury was but for causation. There was but for causation. If Sampson had not bribed these officials, Petrobras America would not have paid $600 million under the contract. So I don't think it's an abuse of the American judicial system for Petrobras America, the entity that actually paid the fees under the contract to bring the action here in the United States. It was entitled to do so under the RICO statute. The district court found there was a appropriate venue to bring a claim. The only issue was approximate causation, and what the district court did is effectively ignored the relationship between the parents and the sub and assumed there was an independent decision without even considering the evidence that we submitted. At minimum, there's a factual issue here. The district court should have analyzed whether there was a genuine issue of factual dispute between the parties, and there was, whether the decision was independent. We submitted a sworn affidavit that it was an independent decision. They cited some testimony from select depositions, which don't support that in our view, which is why we think there's no genuine issue of material fact. But the district court, as I said, completely ignored the affidavit and made a rule, a bright-line rule, that any assignment, no matter what the circumstances, breaks the causal chain. That cannot be the law. No district court has found that an assignment alone breaks the chain. And this court has had a number of decisions where there was no direct relationship between the, there was no requirement, rather, of reliance. Effectively, what the district court was concluding was that there had to be an expectation at the outset of the contract which subsidiary would operate this. This court's decision in waste management, acknowledging the decision by the Supreme Court and Bridge, made clear there's no requirement of direct reliance. We think this case is more like the Bridge case, where there was no direct misrepresentation, but the Supreme Court found that the plaintiff was injured by reason of the RICO violation. People put in false bids. As a result, they come in, the tax liens, and the Supreme Court said that is a direct injury. We think that here, when a drill ship is purchased for a large conglomerate, and the parent assigns the drill ship to one of its subsidiaries, that is a natural result of the violation. District court also ignored the Holmes factors. We think that's an important analysis. It's the reasoning for the test, and they completely ignored it. Now, the cases make clear there is no black letter rule that dictates the result in every case. So they look at these reasons, in the Allstate case, the functional factors, to determine whether this case involves a direct injury. First, if the injury is not direct, it is more difficult to ascertain the amount of damages attributable to the RICO violation, as opposed to other factors. There's no concern here on that issue. The only damages that were paid were under the drilling services contract. That is the only cause of Petrobras America's damage. Second, allowing claims by indirectly injured plaintiffs would force courts to adopt complicated rules to apportion damages among multiple plaintiffs. That's not the case here. There's only one plaintiff, Petrobras America. It is the only entity that paid the fees under the drilling services contract. Finally, the Holmes court recognized that directly injured victims can be counted on to vindicate the law. There's only one directly injured party here, Petrobras America. Now, Sampson has argued that the parent entity was the victim, but the parent entity did not pay any fees under the drilling services contract. Only Petrobras America did. When you review these policy considerations, it leads to only one conclusion. Petrobras America is the actual victim of the bribery scheme, and its injuries are the direct result of that scheme. Now, again, the district court did not even consider, analyze these considerations. It found even if Petrobras America had satisfied these three conditions, these three considerations, that would not be enough to show that Petrobras suffered a direct injury. This was reversible error. Again, I point to the court's decision in the Allstate case. This court recognized that various have used this function. Is your theory that an assignment would always create liability under RICO? I know you're saying that the district court's doing the opposite categorical rule. Are you adopting a categorical rule as well? No, Judge Howe. I think you have to look at the facts and circumstances of the case, as these cases have. You can't create a bright line rule. You can't create a per se rule that assignment by itself is enough. If the idea then is there should be no categorical rule in either direction, what is it about the assignment here? It was a natural consequence of the parents entering the contract. Did I hear you earlier, it was about 10 minutes ago, acknowledging that this was an independent decision? I want to make sure I ... No, it was ... It was not independent. Or you were saying it was not an independent decision? It was not independent. We put an evidence on that effect, to that effect, Judge Howe. I don't understand. How can it be not independent but innocent? I mean, you're hiding behind the corporate structure, right? No, no, no. I think you'll have a hard time, if this case were to go to trial, persuading people that Mr. Severo, wearing both hats, as bribee, didn't know exactly what was going to happen for everybody. But keep in mind that, in fact, the issue of imputation was before this Court previously, and this Court rejected it. Stamps had previously argued that what Severo was doing should be imputed to the parent company, and this Court rejected it. He was clearly acting adversely to Petrobras. He had basically committed them for a five-year contract that ... Could the jury find differently or not? I'm sure if we're back in the district court, they'll make that argument as well. It runs counter to their approximate cause argument, right, Your Honor? I'm aware of that. And they've abandoned it at the summary judgment stage. At the motion-to-dismiss stage, they argued vigorously that Severo and Duque's knowledge should be imputed, and they made the same argument later in the case, only to reverse on summary judgment. But again, that goes to our point. When you look at Petrobras, it is one company. It has a number of operating subsidiaries. It was foreseeable, and I'm not saying foreseeability is required here. It was a natural consequence that this contract would be assigned to a subsidiary, so that it could operate in a location selected by the parent entity. We believe there's no issues of material fact or approximate causation. You say a subsidiary. It could have been a different subsidiary. Is that the idea? It could have been, Your Honor. But in this case, Petrobras America was the only one that was able to take it. I see my time is almost up. At least in that sense, there was independence in the decision. No. It was the executive director who made that selection. So the executive director, Mr. Severo, who's the head of international . . . I guess the idea, though, is, as I understand the RICO case law, it's pretty strict. Would you agree with that? Stricter than normal causation in other contexts. Well, they recognize that not every plaintiff has the right to recover under RICO. There has to be some limits, which is why, again, it goes back to the factual analysis that has to be done. But I guess the idea here is, you know, you were imputing to the district court this categorical rule. Certainly one distinction here is that there was some element of choice by the parent whether to assign and to which entity to assign. Well . . . It's not automatic in that sense. Well, by Spectra itself, the company that actually signed the contract, they don't operate drill ships. So it was going to be assigned somewhere. And I don't think it makes a difference that it was assigned to Petrobras America as opposed to another drill ship. But it does provide some causal breakage, doesn't it? I mean, it's the fact that somebody has to make this discretionary decision where to send the damages. But again . . . The thing is, injury was inevitable. Fair enough. But where the injury is ultimately going to be located is a matter of discretion by the parent. That's a factual issue. If the court is constrained through that analysis and doesn't observe that Petrobras is one company operating with one executive director who makes these decisions, it is at least a factual issue that should be determined by the fact finder. Well, maybe a factual issue is one where I think you're conceding, right, that the parent had to make that decision. Yes, the same parent that was . . . Two rogue officials were receiving bribes. So again, the question is, does the injurious conduct cause the injury? Here it does. The Severo took the bribes, approved the contract, and sent the ship, at least at a later point, it was sent to Petrobras America. You would agree, at a minimum, the parent could have sued? No, because the parent didn't pay any amounts under the contract. Only Petrobras America paid under the contract. There would be no injuries if Petrobras brought the claim. I see my time is up. You have time for rebuttal. Thank you. Okay, Mr. Wiener. Wiener or Weiner? You got it right. It's Wiener, Your Honor. Your Honor, may it please the Court, David Wiener for Samsung Heavy Industries. RICO is a treble damages statute, and it imposes a different and heightened standard for proximate cause than what applies for ordinary torts. Judge Rosenthal properly recognized and applied that standard here to find that Petrobras Americas could not establish this rigorous proximate cause requirement. In doing so, she applied the exact test that the Supreme Court has enunciated that this Court has applied. She looked at the fraudulent conduct that was alleged, specifically the payment of bribes to Petrobras, so that Rospetro would enter into this drillship contract. And then she found that that was not the direct cause of the claimed injury, namely that Petrobras Americas, an entirely different company, a subsidiary, but an independent subsidiary, had to pay for this drillship service contract. So there are four arguments, four issues I'd like to go through on this RICO issue. And I want to start just with this issue of what the actual standard is, because we've heard all sorts of formulations throughout this case about what the Court should look at. Most recently, we just heard repeatedly it was the natural consequence. And in their briefing, they don't use natural consequence. Instead, we hear about inevitability, foreseeability, and whether or not the injury is direct. All of these arguments are attempts to elide what the actual standard is, which is the standard of directness. And the Court has been very clear that the reason we have this ratcheted-up proximate cause standard compared to an ordinary tort is because RICO, like the antitrust statutes, these are treble damages provisions. You agree that there's but-for causation here? We have not contested but-for causation, although I think an argument certainly could be made that the decision that Petrobras Americas made to assume the contract could be viewed as cutting off but-for causation. We argued it in the context of proximate cause, but I think it could go either way. And essentially, what all of these arguments are doing that they're bringing out, these are essentially attempts to import the sort of ordinary tort standard of proximate cause and put it into the RICO context. And in essence, they want to take Mrs. Paul's graph and give all of those tort plaintiffs RICO claims. And that is directly contrary to what the Supreme Court has repeatedly said. And the thing that I find especially interesting, the way their argument has developed, is actually backing into it by looking at a dissenting opinion. And if we actually look at the dissent in Heming, Justice Breyer makes almost word-for-word some of the same arguments that PAI is making now on appeal in the Fifth Circuit. PAI talks about how the common law conceptions of proximate cause are supposed to be broad and are supposed to make it possible for people to recover for injuries. Talks about how, in the dissent, it even talks about how directness is supposed to expand liability, not contract it, and that there should be proximate cause found for injuries that are direct or if they're foreseeable and intended. And although he doesn't specifically use the word inevitability, his opinion essentially endorses that, saying that when the Jenkins Act forms were not, were fraudulently not submitted to the state of New York, that automatically injured New York City because the state was an information conduit of that information. And so the inevitable result is that New York City also can't recover its cigarette tax. Of course, that's a dissenting opinion. And let's look at the majority. What does the majority say in Heming? The Chief Justice says, if these arguments from the dissent sound familiar to you, that's because we rejected all of them in ANZA and we're going to do the same thing here today. These concepts of foreseeability, these concepts that they're talking about, about the common law conceptions of proximate cause, they don't apply in the RICO context. And then the conclusion of the opinion explains why, tying it back to the fact that this is a treble damages statute. Here in this case, we have a plaintiff who claims that they're entitled to $650 million. You treble that and you're at nearly $2 billion. So before we give them this RICO cause of action, it makes perfect sense that we want to be darn sure that the claimed fraudulent conduct is the actual direct cause of their injuries. Could the parent have sued under RICO? It's unclear. I mean, I can understand why they didn't want to bring the parent company into this case. It's a state-owned oil company. That's up to its eyeballs in corruption, bribery, and graft. It's not a terribly sympathetic RICO plaintiff. I think really what you see, and I'll get specifically to your question in a second, Your Honor, but there is a strategy here. And they are playing games, essentially, with corporate form. They are very clear in the district court. They told Judge Rosenthal directly at the summary judgment hearing, we're not making any type of piercing argument. But now we see, creeping back into their briefs in this court, there's sort of this semi-piercing. It's like they want to be a little bit pregnant. They sort of want to do a little bit of piercing and just tip their toe in the water. And they want to have Petrobras Americas sort of take advantage of the harm to the parent company without actually bringing the parent company in here as a plaintiff. Now, to your question specifically, Your Honor, does the parent company have a RICO claim? They certainly are more directly injured. They certainly have an incentive to sue. But they didn't. Whether they could fulfill all the requirements, I don't know. I'd have to give it some more thought. But in this- Of course they would, theoretically, because they entered into a bribe to purchase a drill ship. Had they operated the drill ship, according to the bribe, they'd be in the same position as the subsidiary today. But instead of operating it, they assigned it. They were paid money for the assignment, were they not? It's a little bit unclear how it worked. But in any ordinary commercial transaction, had they assigned the rights to the drill ship, they would have gotten paid. And then when the drill ship, for whatever reason, didn't make the amount of money it was supposed to make and stopped paying, then they would have had a claim. It might have been hard to liquidate. Right. Right. And Your Honor, I would like to go through, now that we have, I think, oriented the standard, the sort of steps that you have to go through. And this will also get to your specific question as well. Because a key theme of their brief now and their argument is this notion that it was inevitable. That once this drill ship contract was signed, somebody in Petrobras was going to get saddled with paying for this drill ship. That is fundamentally not consistent with the facts or the records. I've got some sites. I'll go through them. But if we just go step by step. And starting with the first one, which is what was this drill ship contract for? This wasn't just some generic drill ship contract. The purpose of this and the reason that it was entered into, I think Judge Jones, you brought this up, the market was absolutely booming in deep sea exploration at the time. Because oil prices were stratospheric and they would continue to rise. And so Petrobras is very clear. Their corporate strategy at this time is we need to acquire drill ships. And in fact, they said to their investors, the big risk we face is that we might not have enough drill ships. So we're going to go up and gobble as many as we can. This is part of that strategy. They acquire this drill ship. The reason they acquire this one is because they think they have some promising wells in offshore Angola. Petrobras Americas has now sort of settled on this idea that Bras Petro, which is the immediate parent of Petrobras Americas, they've settled on this idea that Bras Petro isn't really an operator and it wasn't really going to go to Angola in the first place. And I think maybe the easiest way to address this is let's look at what PAI says in their statement of undisputed facts. Paragraph 132. And what they say is the drill ship contract provided that pride was to provide drilling services to Bras Petro in Angola. The record site for this is 21015. And that's actually our response to their statement of undisputed facts. And so you can see what their statement is and our response to it, which is that we agree. It is undisputed. That was what the contract contemplated. You can look at the drill ship contract too. Sections 15.2, 15.14, they talk about the daily rate and the mobilization fee for this drill ship. And they're all pegged to use in Angola. And if the drill ship gets sent somewhere other than Angola, then Bras Petro has to pay the difference in travel, pegged from it being originally in Angola. And if you have any possible doubts about what this contract contemplated, it's at the very end of this contract, there's an actual subcontract between Pride Angola and Sodexo Angola. Sodexo, the big food services provider. And this subcontract provides for food services to be delivered to a drill ship in offshore Angola. And it even specifies that they're supposed to be providing food that will be palatable to employees from West Africa. What's the provision about an assignment for? So the assignment, like virtually every one of the contracts in this industry says that the company, which is a defined term in the contract, the company has the right to assign it. They may assign it. It's not required. And this is an important fact that Petrobras Americas consistently ignores that Judge Rosenthal addresses, which is that there was nothing that compelled Petrobras to assign it to another company within Petrobras. They had the right to assign it to anybody. They could assign it outside of Petrobras, provided that Pride gave its consent, which was not to be unreasonably withheld. Standard terms in a contract. They have argued in this court that maybe Bras Petro only had two subsidiaries and therefore the fact that it went to this particular subsidiary makes it foreseeable and therefore there's causation. But if you look at the definition in the contract, I think this is footnote seven in Judge Rosenthal's opinion. She includes the definition for affiliate and the way affiliate defines permits an assignment by Bras Petro to literally any of the dozens of corporate affiliates within the Petrobras empire. On top of all of that, we have the simple reality. This contract was intended to go to Angola. Petrobras Americas, of course, doesn't operate in Angola. There is both the concession from counsel for Petrobras Americas in the district court. There's also testimony in the record that Petrobras Americas has regulatory authority to operate in the Americas. It operates in the Gulf of Mexico, which is what it ultimately did here. So you've got the fact that this is a contract that can be assigned literally to anybody, anybody within Petrobras or anybody externally. And remember, for a period of time, it is assigned outside of Petrobras. Petrobras Americas itself assigns it to Repsol and they assign it to Murphy. So we know this is a perfectly assignable contract to other entities. Here are all the things that have to, that had to happen between the assignment between the signing of the contract and the assignment ultimately to PAI. So first you have the execution of this, the expectation it's going to be used in Angola as it turns out, their drilling prospects in Angola turn south and they decide we have no need for this drill ship to be used in Angola. So then they have to decide, despite according to them, having no need for another drill ship, they don't even try to find an assignee outside of Petrobras, which makes absolutely no sense according to their theory. But you have to accept for purposes of argument that there is no effort made to assign this to anybody externally. So then Bras Petro decides of all of the possible assignees within the Petrobras family, we're going to decide that it should go to Petrobras Americas. Now we have this little bit of a factual question about whether Petrobras Americas actually wanted this or not. There is, and there's been this discussion about this declaration. This declaration is submitted in response to our summary judgment motion. It is obviously a lawyer written declaration and it is directly contrary to the testimony given by that very same individual. And I'll give you what the testimony is. This is an individual who is testifying as the 30B6 witness for Petrobras Americas. So he's their corporate representative, Pedro Albuquerque. Here's what he says. As the corporate representative on this topic, is it your understanding that at the time PAI signed the assignment and amendment agreement, PAI wished to use the DS-5 to carry out operations in the Gulf of Mexico pursuant to the terms and conditions of the DSC? Answer, yes. This is at 15899 in the ROA. PAI wanted this drill ship. They had operations. They had wells they wanted to drill in the Gulf of Mexico. They get ahold of this drill ship and what do they do with it? They drill wells in the Gulf of Mexico. They use it for several years. As it turns out, those wells also go bust. They then assign it to two other entities outside of Petrobras. At that point, the market starts to go south and then all of a sudden they decide we don't want this anymore. We actually never needed this in the first place. Now if their theory of causation is correct, that whoever the assignee, whoever paid for this drill ship, has a cause of action under RICO, then why wouldn't Repsol and Murphy, the assignees from Petrobras Americas, have that same cause of action? Why couldn't they come forward and say, we have a RICO claim too. We actually never needed this contract or Bras Petro never needed it and it was tainted. And I want to address also just this notion of the role of the assignment as well and its impact on causation because Judge Rosenthal absolutely did not adopt some hard and fast black letter rule that anytime there is an assignment, it automatically cuts off proximate cause. The reason it did here is twofold. Number one, because PAI made this decision that they wanted this contract. That's one. But even if you think that there is some factual dispute about that, even if you buy into that, what distinguishes this case from any run-of-the-mill circumstance of assignment in a possible RICO case is that PAI's argument at summary judgment was that the assignment itself was completely untainted by any fraud. They say that Cervero and Duque played absolutely no role in the decision by Braspetro to assign the contract to PAI. They say that SHI played no role whatsoever in influencing the decision to assign the contract to PAI. Their position has been that the assignment itself essentially was perfectly fine, pure as snow. The only problem is that the contract originally was procured by fraud. You could easily imagine a circumstance where fraud taints the assignment itself. And I think in that circumstance, that probably would not cut off the causal chain. So if Cervero himself had been involved in that process, if bribes had been paid in connection with the assignment, this case, I think, would probably look quite different. But they made a strategic decision to argue that the assignment itself was completely untainted. And I think they have to live with the consequence of that. And the consequence is that they don't have a RICO claim. And remember, they initially had a couple of state law, common law fraud claims for actual and implicit fraud. They abandoned those claims in the course of summary judgment briefing. That may well have been a strategic mistake on their part. Maybe they wouldn't have had the same causation issues with those claims. But the consequence of that cannot be that it therefore should open the door for them to have a RICO claim. I also want to address just one final issue, which is this notion of, is there a more directly injured party? And we did bring this up in summary judgment briefing. It's actually in the statement of undisputed facts. They actually agreed in their response to the statement of undisputed facts that it was undisputed that Bras Petro had reimbursed them, reimbursed that PAI for payments that PAI made to Pride during the period of time when the drillship was being suspensed. We brought this up in the district court. Judge Rosenthal didn't specifically address it. But what it shows is that Bras Petro, although they did not make payments directly to Pride, they did pay for the drillship indirectly by reimbursing PAI for the payments that it made to Pride. The test that the Supreme Court has always looked to in evaluating this factor is whether another party has an incentive to sue. It's not, is there another party that has a good RICO claim? And the best case for this, I think, is in Hemi again, where the Supreme Court says that the state of New York was also deprived of its tax revenue because it also taxed cigarette packs. And the court says, we're not going to weigh in on whether they actually have a RICO claim. What counts is that they have an incentive to try. Petrobras bought Bras Petro. They had incentives to try. Bras Petro, in fact, did try in their arbitration with Pride, which they abandoned with no exchange of money out of a mutual agreement that they were going to instead turn and point the finger at SHI. That's exactly what happened. And that's how this RICO claim came about. Judge Rosenthal properly granted summary judgment. We ask this court to affirm. Thank you, Your Honors. All right. Thank you. Mr. Walsh. Thank you, Your Honor. I want to go back to a question from Judge Howe about whether the district court made any factual determinations on the assignment. This is page 25 of the court's decision, which is the record of 1508 to 1542. It is, this is what the judge wrote. It is immaterial whether the assignment was made to mitigate the losses of the Petrobras entities or whether Petrobras America had little say in this decision. So again, the court is making a bright line rule on assignment. It is not making a factual determination about whether Petrobras America had a say or not in this assignment. We are at the summary judgment stage. We are entitled as a non-movement on this issue, at least, to all reasonable inferences. The judge did not do that in this case. Instead, she created a test, which if this court was to adapt, would be a per se rule on assignments. At minimum, if there's an issue of fact about whether the assignment was voluntary, if there was an independent decision, whether Petrobras had to accept, Petrobras America had to accept the drill ship, this is an issue for the jury. This is not an issue that the judge even got to. So on that point, I again stress that we are at summary judgment. There was some argument about what was said at the depositions as opposed to what was submitted in the declaration. Mr. Albuquerque's declaration, I think, speaks for itself. It was sworn. He testified about it repeatedly. And the questions that were asked at the deposition were with respect to who makes the decision to assign. And this is what Mr. Albuquerque said. It's 15900 in the record. After the contract was signed, the decision to assign it would actually be up to the executive director of that division. Now at the time, that was Severo. Severo had left the position shortly after this contract was signed. But even the independence, even the decision of the executive director at the time of the assignment in 2011 would be at the executive director level. It would not be at Petrobras America, which again, consider how these companies work. We are assuming that Petrobras, each Petrobras operating subsidiary does its own analysis of where rigs are needed. That is not the testimony. And in fact, the argument previously about whether Petrobras needed this drillship proves that point. If there was an argument at the district court level that this ship could have been sent to Brazil, well, who is sending it? The parent company. The parent company makes the decision. Does it go to Brazil or does it go to the United States? And there is no question that a multinational corporation has to operate this way. And if the court were to accept that the assignment breaks the causal chain, you're basically making it a per se rule that any assignment basically prevents an operating company from recovering the damage. Now, again, there were questions about whether Bras Petro should have brought this claim. I don't believe the counsel identified this, but be clear, there was no payment by Bras Petro under the contract. Bras Petro had no damages. We asked the court to reverse the summary judgment decision and remand for the proceedings. Let me just ask you one further question. There was an awful lot of briefing and argument in the briefs about Samsung's counterclaim. So parties have decided not to argue about that. I was awaiting counsel to make that argument. He did not. We rest on the paper. We think that claim should be dismissed. Thank you. Just checking.